# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 557 | **DATE** | 6/27/2003 |
| **CASE TITLE** | VALENTINO vs. PROVISO TOWNSHIP, ET AL | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   **Motion to bar testimony and strike expert report is granted/denied in part. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUL 07 2003 | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | CLERK | | | |
| DW | courtroom deputy's initials | 03 JUL -6 PM 3:34 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TINA VALENTINO,

              Plaintiff,

v.

PROVISO TOWNSHIP,
ROBERT GRACE, JR, individually and as
the Supervisor of Proviso Township, and
JEFFREY ALLEN, ARNIE BRYANT,
MARIANNE LASKI AND DONALD
SLOAN, individually and in their capacities
as PROVISO TOWNSHIP TRUSTEES,

              Defendants.

No. 01 C 557
Judge James B. Zagel

**DOCKETED**
JUL 0 7 2003

## MEMORANDUM OPINION AND ORDER

This dispute arises out of the elimination of the Public Relations position in Defendant

Proviso Township ("Township"). Plaintiff, Tina Valentino, held the eliminated position and

claims that she was discharged in retaliation for filing a sexual harassment complaint against the

Township. The Township responded that Valentino was discharged due to financial restraints

and that the Public Relations position was eliminated to save money.

The Township has moved to bar the testimony and strike the report of Valentino's expert,

Robert E. Horstman, an accountant and auditor of local governments. Horstman concluded that

1) the Township had adequate cash and investments and financial resources to conduct its affairs;

2) the Township's ability to borrow short term and long term, at will, has not been impaired; and

3) the Township's financial condition did not warrant the termination of not just Valentino, but

of any staff. The Township claims that Horstman's testimony and report fails to meet the

standard for admissibility of expert testimony under Federal Rule of Evidence Rule 702 and



*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Township also claims

that Horstman's report is biased because Horstman believed that he would only be paid his

expert witness fee if Valentino prevailed.


Admission of Expert Testimony and Report

Under Federal Rule Evidence 702, social science expert testimony "must be tested to be

sure that the person possesses genuine expertise in a field and that her court testimony 'adheres

to the same standards of intellectual rigor that are demanded in [her] professional work.'" *Tyus*

*v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) (citations omitted). The expert

opinion must be more than simply a "subjective belief or unsupported speculation." *Daubert*,

509 U.S. at 590. The focus, however, "must be solely on principles and methodology, not on the

conclusions that they generate." *Id.* at 595. First, I must determine whether Horstman's report

and testimony is reliable. *Cummins v. Lyle Industries*, 93 F.3d 362, 367 (7th Cir. 1996). Second,

I must decide "whether evidence or testimony assists the trier of fact in understanding the

evidence or in determining a fact in issue." *Id.* at 368 (citations omitted).

The Township claims Horstman's report and testimony do not meet the *Daubert*

standards because Horstman used no accounting theory or technique, his conclusions are not

based on his expertise, and his conclusions will not assist the trier of fact.


*First Expert Conclusion*

Horstman based his *first* conclusion, that the township had adequate cash and investments

and financial resources to conduct its affairs, on (1) his experience as an auditor of local

governments for 25 years; (2) on a cash to expenditure ratio analysis; and (3) on a review of the

2

consistency and quality of the Township's revenue stream. The cash to expenditure ratio is simply the ratio of cash on hand to expenditures. The review of the consistency and quality of the revenue stream analysis evaluates the Township's revenue stream, such as real estate taxes, to determine if it is consistent and if the Township can rely on this revenue to meet its expenditures.

Horstman's report contains no mention of any outside sources. However, Horstman's affidavit explained he did not need to consult any accounting books or publications when preparing the report because the two techniques he used were elementary accounting techniques that he had used often over the past 25 years and thus, he did not need to refer to any accounting publications. Horstman also claims familiarity with *What you Should Know About Your Local Government's Finances. A Guide to Financial Statements,* published by the Governmental Accounting Standards Board, and which discusses cash ratio analyses. Valentino argues that the Township has not presented any evidence that these principles are *not* generally accepted; however, the party seeking to admit the evidence bears the burden to establish its admissibility. *In re Bridgestone/Firestone, Inc.,* 2002 WL 31907241, at \*2 (S.D. Ind. Dec. 19, 2002) (citing *Daubert,* 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999)).

Valentino claims that Horstman's conclusions are easily verifiable as Horstman only condensed the information that was already in the Township's own audit reports and then performed simple math calculations to reach his conclusions. The math calculations themselves are accounting, not science. *Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp.,* 223 F.3d 585, 591 (7th Cir. 2000) (holding that an accountant's calculation of the discounted present value of lost future earnings, based on financial information and assumptions given by counsel, was accounting, not science, and was a calculation within the competence of a CPA). However, it is

3

the methods which need to be reliable. *Daubert*, 509 U.S. at 595. Horstman stated he has used

the cash to expenditure ratio and the consistency of revenue stream techniques for the past 25

years when working for local governments, thus his methods "adhere to the same standards of

intellectual rigor that are demanded in [his] professional work." *Rosen v. Ciba-Geigy Corp.*, 78

F.3d 316, 318 (7th Cir. 1996). Taking data from an audit, identifying the revenue sources, and

calculating the cash to expenditure ratio appears to be a reliable method to determine if an

organization can meet its expenses.

Horstman's report and testimony regarding the financial condition of the Township will

also assist the trier of fact in understanding the evidence and determining a fact at issue. The

Township claims that Valentino's position was eliminated due to financial restraints; Valentino

alleges she was terminated in retaliation for filing a sexual harassment claim. Thus, the financial

condition of the Township is a fact at issue. As a CPA and auditor of local governments,

Horstman's calculations, analysis, and conclusion that the Township had adequate cash and

investments and financial resources to conduct its affairs will assist the trier of fact. Therefore,

Horstman's first conclusion meets the *Daubert* standards.


*Second Expert Conclusion*

In coming to Horstman's *second* conclusion that the Township's ability to borrow short-

term and long term, at will, has not been impaired, Horstman analyzed the borrowing history of

the Township. Horstman's report included a timeline of the loan activity of the Township

including when each loan was borrowed and paid off and the loan balance over time. From the

loan activity, Horstman concluded the Township could still borrow using assets and collections

on real estate taxes as collateral. Horstman stated he thought this analysis was widespread

4

knowledge; however, neither Valentino's response to the motion nor Horstman's subsequent

affidavit makes mention of anything to support his assertion that this borrowing history analysis

is widespread knowledge or a reliable method to determine the borrowing ability of a Township.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit

opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Clark*

*v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) (quoting *General Electric Co. v. Joinder*, 522

U.S. 136 (1997)). Because Valentino has not met the burden required by *Daubert* to prove the

analysis is reliable, Horstman's second conclusion is stricken.


*Third Expert Conclusion*

Valentino claims Horstman's *third* conclusion, that the Township's financial condition

did not warrant the termination of any staff, is within his field of expertise. Valentino relies on

the fact that Horstman has advised local governments for 25 years on whether or not their

finances allow them to support all of their employment positions by using general accounting

techniques. Horstman's experience alone is not necessarily enough; I must determine "whether

the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a

genuine scientist." *Rosen*, 78 F.3d at 318. Horstman stated his third conclusion "hinges on those

other two opinions." Because his third conclusion is at least partly based on his second

conclusion that I found unreliable above, the third conclusion is also unreliable and therefore

stricken.


*Allegation of Bias*


5

The Township claims that Horstman's report is biased because Horstman believed that

the method of payment for his services was, in effect, a contingent fee. The Township relies

upon *First National Bank of Springfield v. Malpractice Research, Inc.*, where the Illinois

Supreme Court held that a contingent fee contract with an expert witness finder was void against

public policy. 688 N.E.2d 1179, 1182-83 (Ill. 1997). However, *Malpractice Research* only

"involved the invalidation of a contract as against public policy, not the disqualification of a

witness for bias . . . ." *People v. McNeill*, 736 N.E.2d 703, 705 (Ill. App. Ct. 2000).

The Township also relies on Rule 3.3(a)(15) of the Rules of Professional Conduct which

states that while a lawyer may pay a reasonable fee for an expert witness, "a lawyer shall not . . .

pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the

content of the witness' testimony or the outcome of the case . . . ." IL CS S Ct Rules of Prof.

Conduct, RPC Rule 3.3(a)(15). However, the Seventh Circuit held that the "rule against

employing expert witnesses on a contingent-fee basis . . . . is a rule of professional conduct rather

than of admissibility of evidence . . . . [and] it does not follow that evidence obtained in violation

of the rule is inadmissible." *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988).

While the Rules of Professional Conduct have been promulgated by the Northern District of

Illinois, a local rule may not require the exclusion of evidence. *United States v. Condon*, 170

F.3d 687, 690 (7th Cir. 1999). Thus, the issue of Horstman's compensation and his beliefs about

his compensation only affect Horstman's credibility as a witness, not the admissibility of his

report and testimony.

The Township also argues that Horstman's report is biased because Valentino's attorneys

wrote a letter with comments regarding Horstman's report. After responding to the comments,

Horstman "changed or clarified" his report. The Township does not identify how the letter or

Horstman's responses biased his report. A review of the letter shows that the attorneys' comments and questions only asked for clarification. The comments included such things as suggesting the identification of the dates of the Township's fiscal year and asking what caused the Township's $467,517 increase in expenditures. Nothing in the letter or Horstman's response suggests any bias.

The Township's motion to strike and exclude Horstman's expert report and testimony is GRANTED in part and DENIED in part.[1] The report and testimony referring to Horstman's *first* conclusion, that the township had adequate cash and investments and financial resources to conduct its affairs, is allowed. Any portion of the report or testimony referring to Horstman's *second* conclusion, that the Township's ability to borrow short-term and long term, at will, has not been impaired, or *third* conclusion, that the Township's financial condition did not warrant the termination of any staff, is barred.

ENTERED:

James B. Zagel
United States District Judge

DATE: 27 Jun 2003

---

[1] This ruling hinges on the assumption that the Township's defense is based on its *financial inability* to spend money (*i.e.*, that it had inadequate funding at the time Valentino's position was eliminated) and not based on the Township's *unwillingness* to spend money (*i.e.*, that the Township changed its policies to build a rainy-day fund or to reduce taxes).

7